## Fekete v. The Glen Alden Coal Company.

*David Rosenthal*, for claimant; *Elmer D. Adair*, for defendant.

COUGHLIN, J., March 18, 1929.—This matter comes before us on an appeal from the decision of the Workmen's Compensation Board, dismissing appeal from decision of the referee disallowing compensation. Defendant moves to quash the appeal, averring that claimant neglected and failed to serve upon defendant written notice of appeal, setting forth the date thereof and the court in which same was filed; and averring, further, that claimant neglected and failed to serve on defendant a copy of the exceptions to the action of the board, as provided for in section 427 of the Workmen's Compensation Act, as amended by the Act of June 26, 1919, P. L. 642. Counsel for claimant avers that he was under the impression that notice had been given by the prothonotary. It does not appear that defendant was not aware of the court to which the appeal was taken, or that defendant did not have knowledge thereof.

From the reading of the statute, it would appear that such notice should be given immediately or within a reasonable time. This claimant's counsel

failed to do. We would be loath to thwart a claimant's right to compensation, if his claim was meritorious, because of the neglect of his counsel. On the other hand, the burden is upon the claimant to proceed in the manner provided by the statute, if he seeks to establish his claim thereunder. Attention has repeatedly been called to the fact that counsel should follow procedure provided by law, and not, by their neglect, jeopardize the interest of claimants. In the present case we prefer to consider the appeal on its merits. believing that the decision of the referee, sustained by the board, was proper.

The referee found that *(a)* the claimant was an employee of The Glen Alden Coal Company as a miner in the underground workings of their Woodward Colliery, located in Luzerne County, Pa.; *(b)* shortly before noon, May 26, 1927, being the day before the accident in question, a caving took place in the bottom vein, No. 3 shaft, of the defendant's colliery. Men employed in that section were ordered to leave at once. Claimant, working in an upper level, was among the men ordered out. Due to the cave damage, officials notified the colliery engineer not to blow the whistle for work at 7 P. M., as was the custom when there was work the following day; *(c)* shortly after 6 o'clock, May 27th, being the day following, claimant went to the head of No. 3 shaft of defendant's colliery to ascertain whether he was wanted for work that day. While waiting to see the boss to inquire about work, he entered a shanty at the head of the shaft to keep warm—the weather being cold and raw. Claimant was injured by a terrific explosion, wrecking the building, a few minutes after entering; *(d)* claimant was not actually furthering the interest of his employer when injured, although upon employer's premises. Claimant was not in the course of employment when injured; that he voluntarily came upon the premises at a time when the mines were shut down, due to accident.

The evidence fully supports the findings of fact and conclusions of law.

One, Dehortal, a fellow-worker, a buddy of claimant, was in the same shanty with claimant. In his own language, he was "waiting for the boss." He gave as a reason: "I wanted to ask him whether I was going to work or not." He had been ordered out of the mines the day before when there had been a great cave. He had known that men had been injured thereby; saw injured men brought out on the cage. He was aware that other men had been caught in the mines and that a rescue crew had been and were at work. From his own testimony, he did not come upon the premises for the purpose of going to work, but, at best, to find out what was going to be done. He was dressed in clean clothes, not working clothes.

Another witness, Kuller, called by claimant, testified: "I go to see if there was work or not."

The claimant himself, who lived five minutes' walk from the shaft, admitted he was on the premises with his street clothes and without a dinner-pail. He knew of the disaster. In his own language, he states: "I want to find out how they made out; if they need anybody to go to work I go to work."

Under the statutes, compensation is allowed for "personal injury to, or for the death of, such employee, by accident, in the course of his employment." The act further defines "injury by an accident in the course of his employment" as including injuries "sustained while the employee is actually engaged in the furtherance of the business or affairs of the employer."

It is true that the Compensation Act, being a remedial act, is to receive a liberal construction: Pater *v.* Superior Steel Co., 263 Pa. 244. But to be entitled to compensation, claimant must bring himself within the provisions of the act. The test is whether he was in the course of his employment, not

544

whether he was on the premises of the employer: Ward *v.* The Atlantic Refining Co., 84 Pa. Superior Ct. 434.

"Whether a workman is injured or killed in the course of his employment within the meaning of that term as used in the Workmen's Compensation Law is a question of law, and as such is open to review.

"Under the Act of June 26, 1919, P. L. 642, the evidence in workmen's compensation cases is brought before the appellate court, and it is incumbent upon that court to determine whether there is evidence to support the findings, and whether the law has been properly applied:" Poffinberger *v.* W. W. Martin Co., 83 Pa. Superior Ct. 524.

It is true that compensation will be awarded an employee injured while attempting to reach his work on premises used by his employer in the conduct of his business. See Tolan *v.* Philadelphia & Reading Coal and Iron Co., 270 Pa. 12. Under the testimony in the case at bar, however, the referee could not have found that the claimant was going to work. All the evidence, including the admission of claimant himself, establishes that claimant, with knowledge that a disaster at the mines where he worked, within five minutes' walk from his home, had occurred the day before, went upon defendant's premises to see what was going on, unprepared to go down the shaft, but intending, if work was to be started, to return and dress therefor. Clearly the referee could not have found that he was in the course of his employment, or that he was engaged in the furtherance of the business or the affairs of his employer. Therefore:

Decision of the referee, affirmed by the Compensation Board, is sustained and the appeal of claimant dismissed.

From Frank P. Slattery, Wilkes-Barre, Pa.